E-FILED
Monday, 15 June, 2026  02:36:26 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

G.R.P. Mechanical Company, Inc.,
    Plaintiff,

v.

GREENLIGHT DESIGN PARTNERS,
LLC, *et al.*,
    Defendants.

Case No. 26-cv-1023

### Order

Now before the Court is the Defendants, Greenlight Design Partners, LLC ("Greenlight"), Alex Leighton, and Scott Engstrom's Motion to Dismiss (D. 24) the Plaintiff, G.R.P. Mechanical Company, Inc.'s ("GRP") Amended Complaint. (D. 23).[1] For the reasons set forth below, the Defendants' Motion is granted.

### I

On March 27, 2026, GRP filed its Amended Complaint. (D. 23). The Defendants filed this Motion to Dismiss on April 15, 2026 (D. 24), to which GRP timely responded. (D. 25). The Motion is therefore ripe for disposition.

### II

This case centers on GRP's allegations that the individual Defendants—GRP's former employees—stole GRP's trade secrets before resigning from GRP and launching their own company, Greenlight. Mr. Engstrom began working for GRP in November of 2019, and Mr. Leighton in October of 2020. Both employees resigned on December 29, 2025, and together formed Greenlight the next day.

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

While with GRP, the individual Defendants had "access to [GRP's] proprietary and confidential information," which included "pricing strategies, bid and cost models, sensitive customer information, customer and vendor relationships, and detailed technical and design specifications." (D. 23 at ECF p. 2).

After the individual Defendants' resignations, GRP conducted a "forensic review" of the Defendants' devices, which revealed that they "exploited their access to [GRP's] confidential, proprietary, and unique information and trade secrets". (*Id.* at ECF p. 4). GRP further alleges that Greenlight, while using those trade secrets, submitted a competing bid against GRP for "multiple procurement solicitations". (*Id.* at ECF p. 5). Greenlight also allegedly "contacted … a supplier of [GRP's], seeking to use the same proprietary design specifications and exact quantity/sizes previously developed and used by [GRP]." (*Id.* at ECF p. 6). And Mr. Engstrom, "[w]hile still employed by Plaintiff …, disclosed to the Pontiac Elementary School Districts proprietary and non-public portions of Plaintiff's proposals … before Plaintiff submitted its proposal." *Id.* This, in turn, allowed "competing bidders" to obtain "advance[d] knowledge of Plaintiff's anticipated proposal terms". (*Id.*).

In response to these events, GRP filed the pending lawsuit. GRP initially sought a Temporary Restraining Order, (D. 3), which the Court denied — primarily on the basis that GRP's trade secret allegations were overly broad, and that GRP had not shown it took adequate steps to ensure the confidentiality of those trade secrets. (D. 20). GRP has since filed an Amended Complaint, with five counts: Count I (DTSA), Count II (ITSA), Count III (Tortious Interference), Count IV (Breach of Duty of Loyalty), and Count V (Conversion). (D. 23). In the pending Motion, the Defendants seek to dismiss all five claims.

## III

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 665-66 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

## IV

The Defendants primarily argue that GRP has failed to identify a trade secret, and has similarly failed to ensure confidentiality. They further move to dismiss GRP's three state-law claims for failure to state a claim. The Court will address these arguments in turn.

3

**A**

The Defendants primarily argue that the Plaintiff has failed to adequately identify any trade secrets. "At the pleading stage, plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms." *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, No. 14 C 7505, 2015 WL 4945240, at *3 (N.D. Ill. Aug. 19, 2015). That said, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992).

Based on the Amended Complaint, accepted as true and with inferences drawn in the Plaintiff's favor, the Court finds that the Plaintiff has failed to identify a trade secret. In the Complaint, the Plaintiff alleges broadly that its "confidential trade secrets, whether recorded on paper, on a computer, or otherwise, constitute trade secrets in accordance with" governing law. (D. 23 at ECF p. 9). As underlying factual support, the Plaintiff explains that the Defendants "had … access to Plaintiff's proprietary and confidential information, and trade secrets through a VPN and Plaintiff-issued laptop computers, including … pricing strategies, bid and cost models, sensitive customer information, customer and vendor relationships, and detailed technical and design specifications." (D. 23 at ECF p. 2).

Further, the Plaintiff alleges that Mr. Engstrom "disclosed to Pontiac Elementary School District 429, confidential and proprietary HVAC design specifications concerning Plaintiff's bid". (*Id.* at ECF p. 3). Moreover, an apparent "forensic review" of Mr. Engstrom and Mr. Leighton's devices "revealed that, in the weeks leading up to their resignation," they "exploited their access to" the Plaintiff's confidential information "by downloading, copying, or transmitting thousands of documents onto personal storage devices". (*Id.* at ECF p. 4). The

Defendants then used this information, alleges the Plaintiff, to submit competing bids against the Plaintiff on several projects.

In their Motion, the Defendants argue that the Plaintiff has identified only broad categories of unprotected information. Rather than identifying what specific information is protected, argue the Defendants, the Plaintiff merely identifies "pricing strategies, bid and cost models, sensitive customer information, customer and vendor relationships, and detailed technical and design specifications." (D. 24 at ECF p. 5). Separately, the Defendants argue that the Plaintiff has publicly disclosed the information it claims to be confidential and protected. For one, GRP attached the RFPs "as exhibits to its TRO Motion, and each are available for anyone to see." (*Id*. at ECF p. 6).

In response, GRP argues that, at this stage, it need only identify its trade secrets "in a general sense." (D. 25 at ECF p. 3). And here, GRP argues, it has done so through the allegations in the Complaint. As to confidentiality, the Plaintiff argues that "[l]imited disclosure does not destroy trade secret protection for a product." (D. 25 at ECF p. 7). In turn, while the Plaintiff acknowledges that its RFP documents ultimately were public, the underlying "pricing formulas, energy savings calculations workbooks, job cost code schedules, and compilation of project date" remained confidential trade secrets. (*Id*. at ECF p. 8).

Here, the Plaintiff still falls short of alleging any sort of specific, confidential product or information. Rather, the Plaintiff broadly refers to "pricing models" and "design specifications" and "customer information". But the Court (and the Defendants) are left unaware of what pricing model, what design specification, and what customer information the Defendants ostensibly stole. Surely, every piece of customer information is not a trade secret. Similarly, the Court is doubtful that every "design specification" is confidential and protected under the DTSA and ITSA. Without more detail to apprise the Defendants of what trade secrets

they allegedly stole, GRP fails to state a claim. *See Carpenter v. Aspen Search Advisers, LLC*, No. 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (quoting *Composite Marine Propellers*, 962 F.2d at 1266) ("Finally, the court dismisses Count IV, as well, because Aspen's allegations, while lengthy, provide no specifics about the nature of the confidential data for which it claims trade secret protection. A party seeking trade secret protection must do more than 'point to broad areas of [information] ... and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets.'"); *Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 14, 1993) ("Although Plaintiffs have made blanket generalizations regarding the information and documentation of their cooking ovens, they have failed to specify with any exactitude which pieces of information actually constitute trade secrets. In order for this court to attempt to categorize the alleged material as a trade secret, it is necessary for the court to be directed as to how this information is unique and protected. The necessary detail required in pleading a cause of action under this Act is not present in the complaint."); *Nielsen Consumer LLC v. Circana, LLC*, No. 24 CV 10946, 2025 WL 815666, at *10 (N.D. Ill. Mar. 13, 2025) ("In contrast, NielsenIQ's complaint provides no guidance as to what "derived attributes" are and how they work. Such "blanket generalizations" are insufficient as a matter of law and leave Circana—and the Court—in the dark about the type of data is at issue."); *Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 14, 1993) ("Although Plaintiffs have made blanket generalizations regarding the information and documentation of their cooking ovens, they have failed to specify with any exactitude which pieces of information actually constitute trade secrets. In order for this court to attempt to categorize the alleged material as a trade secret, it is necessary for the court to be directed as to how this information is unique and protected. The necessary detail required in

6

pleading a cause of action under this Act is not present in the complaint."); *cf.*
*AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (quoting
*Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265–66 (7th Cir.
1992)) (finding allegations sufficient where the complaint "specifie[d] Staffing
Simulation software and the source code for PPS software as trade secrets" as
opposed to "'broad areas of technology'").

**B**

As a separate basis for dismissal, GRP does not allege that it took reasonable
steps to communicate the confidentiality of its alleged trade secrets. There is one
set of allegations that, in a vacuum, could rise to the level of required specificity:

17. This data included Plaintiff's confidential, proprietary, and unique
information, as well as Plaintiff's trade secrets …, specifically:

a. The scope of work for Pontiac CCSD 429, which included, but was
not limited to, designs for the installation and/or modification of the
school buildings' HVAC systems, electrical systems, carpentry work,
and flooring installation.

b. Plaintiff's confidential and unique pricing formula worksheet that
it uses across clients to determine the viability of a project and to
determine the proper bidding range to determine profitability.

c. Plaintiff's Contract Utility Exhibits on multiple jobs, which consist
of detailed energy savings and calculation workbooks. These
workbooks contain confidential methodologies, formulas,
calculations, and structured data used to determine projected energy
savings and contract values.

d. Plaintiff's Job Cost Code Schedule of Values, which organizes
project costs by internal job cost codes and is used for invoicing and

7

billing clients. This schedule reflects Plaintiff's internal cost structure, pricing methodology, and billing framework.

e. The scope of work for previous jobs Plaintiff completed, which included, but were not limited to, pricing strategies, designs for the installation, and/or modification of HVAC systems, electrical systems, carpentry work, and flooring installation.

(D. 23 at ECF p. 4). Information and products, such as the ones alleged above, are not confidential merely because an employer subjectively believes them to be confidential. Rather, "[f]irst and foremost, trade secret law protects only information that is kept secret. The owner of the secret must take reasonable, though not extravagant, measures to protect its secrecy." *Flotec, Inc. v. S. Rsch., Inc.*, 16 F. Supp. 2d 992, 999–1000 (S.D. Ind. 1998) (citing *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.*, 925 F.2d 174, 178–80 (7th Cir. 1991)). By way of example, "[t]he owner may disclose information in confidence to employees or others without losing the legal protection of the trade secret, but a disclosure outside a confidential relationship destroys the legal protection." *Id.* (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 584 (1985)).

Thus, even if GRP is specific enough in its Complaint to identify trade secrets, it does not plausibly allege confidentiality. In other words, GRP fails to allege any sufficient measures taken to protect the relevant information and put the Defendants on notice that GRP possessed trade secrets. GRP does allege that a confidentiality agreement ensures its employees do not disclose trade secrets. The relevant confidentiality agreement, however, instructs GRP employees not to disclose "property, trade secrets, or confidential information belonging to *other parties*." (D. 24 at ECF p. 8) (emphasis added). It further protects information that is "subject to valid and binding confidentiality agreements with *third parties*." *Id.* (emphasis added). But GRP fails to persuasively identify any provision that

8

imposes confidentiality restrictions on GRP's own information. Rather, it seems only to protect GRP employees from disclosing information belonging to third parties. The lack of any material confidentiality agreement is essentially fatal to a trade secret claim. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 898 (N.D. Ill. 2019) (collecting cases) ("CGW's data security was so lacking that it is difficult to identify the most significant shortcoming, but the company's failure to require those with access to its supposed trade secrets to enter into non-disclosure and confidentiality agreements has to be counted among the most fundamental omissions by the company. Failure to enter into nondisclosure or confidentiality agreements often dooms trade secret claims.").

Further, GRP alleges that its handbook requires confidentiality. But the handbook makes perfectly clear, at the outset, that "[n]othing contained in this handbook is intended to create a contract … or otherwise to create legally enforceable obligations on the part of GRP … or its employees." *Id*. The Court is powerless, then, to enforce any supposed confidentiality provision found in the Handbook. *See Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (internal citations omitted) ("Even if we assume … the UPS handbook could, as we doubt, be interpreted to contain a clear promise not to demote an employee except for cause, the plaintiff's contractual claim is extinguished by the statement in the handbook that 'this Policy Book is not a contract of employment and does not affect your rights as an employee of UPS.' Such a disclaimer, if clear and forthright, as it is here … is a complete defense to a suit for breach of contract based on an employee handbook.").

Lastly, GRP contends that it protects its proprietary information through passwords and a VPN. But GRP provides no persuasive authority that such minimal steps will place an employee (or litigant, or court) on notice of what information is a trade secret, and what information merely requires a password

9

for access (which, in 2026, is practically everything). *See Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C 2554, 2018 WL 5298527, at *5 (N.D. Ill. Oct. 25, 2018) ("The Court agrees with defendants. Although password protection and other efforts to keep a customer list private are relevant, they are not sufficient to warrant protection if the list can be easily reconstructed using publicly available information.").

In sum, GRP's allegations do not convey reasonable measures taken to protect the confidentiality of its apparent trade secrets. There is no relevant confidentiality agreement, no relevant non-compete agreement,  no enforceable handbook, and no empirical steps taken to convey the confidential nature of the relevant information. *See CMBB LLC v. Lockwood Mfg., Inc.*, 628 F. Supp. 2d 881, 885 (N.D. Ill. 2009) (collecting cases) ("In fact, in cases that address whether an employer took reasonable steps to protect information as a trade secret, the presence or absence of confidentiality agreements or other means to convey confidentiality to employees often has a significant and predictable bearing on the outcome of the case."). In light of this, it is not plausible for the Defendants or the Court to discern what information is a protected trade secret and which is not. *See Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 891 (7th Cir. 2012) (affirming that "where one company fails to take any protective steps to shield its proprietary information, it cannot then expect the law to protect it when the relationship sours"); *cf. SKF USA Inc. v. Bjerkness*, 2010 WL 3155981, at *6 (N.D. Ill. Aug. 9, 2010) (finding plaintiff took reasonable efforts to maintain the secrecy of its information where it (1) required employees to sign secrecy agreements, (2) implemented password protection for important files and granted access to different sets of documents based on employees' duties, (3) instructed employees not to share its databases with customers, (4) and only shared information with customers after having the customer sign a nondisclosure agreement); *AbbVie Inc. v. BeiGene, LTD.*, No. 24-CV-8167, 2026 WL 1296104, at *7 (N.D. Ill. May 12, 2026) ("In particular, the

Complaint includes several allegations about protections specific to AbbVie's BTK degrader trade secrets: the company limits informational access to certain employees; requires each 'critical function stakeholder' to approve the list of personnel with such access; requires approval from AbbVie security and IT professionals to grant access; and restricts access to the building areas and servers that store the BTK degrader trade secrets, among other protections. AbbVie further alleges that it has written policies and procedures governing its information technology; trains its employees on the company's Code of Business Conduct, including how to protect confidential and proprietary information; and protects confidential information from third-party disclosure through nondisclosure agreements. At this stage, the Court finds it plausible that these efforts constitute 'reasonable' measures to protect AbbVie's trade secrets.").

Thus, on this independent basis, Count I of GRP's Amended Complaint is dismissed without prejudice. Of course, if GRP is prepared to identify what trade secrets were allegedly stolen, and what measures GRP instilled to ensure the confidentiality of those trade secrets, GRP is permitted to amend its complaint and provide more specificity. But for now, the allegations in the Amended Complaint fail to state a claim under the DTSA (or the corollary ITSA).

## C

With the dismissal of the Plaintiff's DTSA claim, all that remains is the Plaintiff's state-law claims of tortious interference, breach of duty of loyalty, and conversion. "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Here, there exists "no compelling reason for this Court to retain jurisdiction." *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 813 (N.D. Ill. 2014) (dismissing without prejudice remaining state law claims after all federal claims

have been dismissed). Accordingly, the Court dismisses without prejudice Counts II, III, IV, and V of the Plaintiff's Amended Complaint. If the Plaintiff, in a new amended complaint, believes it can plausibly allege violations of the DTSA, the Plaintiff is also welcome to amend and renew Counts II through V.

## V

For the reasons set forth above, the Defendants' Motion to Dismiss (D. 24) GRP's Amended Complaint (D. 23) is granted. The Plaintiff shall have fourteen days to file a new amended complaint consistent with this Order.

*It is so ordered.*

Entered on June 15, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE